# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 3:12-cr-96-RBD-MCR

WILLIAM ARTHUR VANHOLTEN

_____

## ORDER

Before the Court is the Government and Defendant William Arthur Vanholten's Joint Response to Motion for Compassionate Release, construed as a joint motion. (Doc. 96 ("Motion").) Both parties agree that Mr. Vanholten qualifies for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (*Id.*) The Motion is due to be granted.

## BACKGROUND

Mr. Vanholten is serving a life sentence for trafficking cocaine, in essence, because he sold two dime bags of marijuana, $20 worth, to two undercover police officers when he was nineteen years old. (Doc. 33; PSR ¶ 33.) In January 2012, he was pulled over on I-95 northbound while driving in tandem with another car carrying ten kilograms of cocaine in the trunk. (Doc. 64, pp. 230–40.) Investigators linked Mr. Vanholten to the cocaine, leading to his arrest and indictment on one count of aiding and abetting the possession and intent to sell over five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2.

(Docs. 1, 64, 65.) The Government filed a 21 U.S.C. § 851 information advising the Court that Mr. Vanholten had a prior felony drug conviction—a 2006 federal charge for possession of 250 grams of cocaine with intent to distribute—which enhanced the mandatory minimum penalty to twenty years for his crime. (Doc. 5.) He remained in custody after his arrest pending trial. (Docs. 6, 14.)

Plea negotiations broke down because Mr. Vanholten would not say "where [the cocaine] came from and where it was going." (Doc. 70, p. 5:8–24.) In turn, the Government amended the § 851 notice to add a second prior drug felony—the previously mentioned 1996 marijuana offense—which upped the mandatory minimum to life in prison. (Doc. 33.) Despite the looming prospect of life behind bars, the case went to trial. (Docs. 63, 64.) On August 3, 2012, a jury convicted Mr. Vanholten of the indicted charge. (Doc. 38.)

Bound by the § 851 enhancement, this Court imposed a term of life imprisonment on November 19, 2012, to be followed with ten years of supervised release. (Doc. 70, pp. 9, 13.) In its remarks, the Court expressed it "would not impose a life sentence but would impose a sentence of a significant period of incarceration" if it had any discretion to do so. (*Id.* at 13.) Mr. Vanholten has remained incarcerated with the Federal Bureau of Prisons ("BOP") ever since.[1]

---

[1] The BOP presently houses Mr. Vanholten at FCI Coleman in Sumter County, Florida. (Doc. 91, p. 25.)

2

(Doc. 91, p. 25.)

In the intervening years, Congress modified the list of prior offenses qualifying defendants for § 851 enhancements (also known as recidivist enhancements) in drug trafficking prosecutions under § 841(b)(1)(a) and lowered the mandatory minimums associated with those enhancements. *See* First Step Act, 115 Pub. L. No. 391, § 401, 132 Stat. 5194, 5220 (2018). The U.S. Sentencing Commission ("Commission") also submitted to Congress an amendment to the policy statement regarding compassionate release in the U.S. Sentencing Guidelines—which became effective November 1, 2023. *See* Sentencing Guidelines for U.S. Courts, 88 Fed. Reg. 28,254–28,259 (May 3, 2023); U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n, amended 2023).

In 2022, Mr. Vanholten, 47, moved *pro se* for compassionate release pursuant 18 U.S.C. § 3582(c)(1)(A), citing his sarcoidosis, a chronic condition characterized by inflammation in the lungs and other organs, as justification. (Doc. 83.) The Government opposed his initial motion. (Doc. 85.) The Court appointed counsel to represent Mr. Vanholten further in seeking compassionate release, who filed a supplemental motion ("Supplement") offering a non-medical reason for release based on a change in the law, which the new amendment permits. (Docs. 89, 91.) At Mr. Vanholten's request, the Court held the Supplement in abeyance until the amendment went into effect. (Doc. 92.) Ordered to respond, the Government

requested and received an extension to reconsider its original opposition to release for medical reasons. (Doc. 94.) The parties then jointly requested the Court to order that Mr. Vanholten's medical condition establishes "extraordinary and compelling" reasons warranting release both alone and combined with other factors. (Doc. 96.) After a hearing on the stipulation (Doc. 97), the matter is ripe.

## STANDARDS

The statute governing compassionate release, as amended by the First Step Act, sets forth the limited circumstances in which a court may modify a sentence. 18 U.S.C. § 3582(c)(1)(A). A court may grant a reduction or release when: (1) the defendant exhausted his administrative remedies with the BOP;[2] (2) the 18 U.S.C. § 3553(a) sentencing factors support release; (3) extraordinary and compelling reasons warrant release; and (4) the defendant is not a danger to the community. *See id.*; U.S.S.G. § 1B1.13. Failure by the defendant to demonstrate any of the four requirements will result in denial, and courts may evaluate them in any order. *United States v. Tinker*, 14 F.4th 1234, 1237–38 (11th Cir. 2021).

## ANALYSIS

### I.   18 U.S.C. § 3553(a) and Danger to the Community

Mr. Vanholten's individualized circumstances, including his record while

---

[2] The Government concedes that Mr. Vanholten has exhausted his administrative remedies, so the Court need not address that issue. (Doc. 85, p. 7.)

4

incarcerated, do not evidence any danger to the community, nor do they implicate the § 3553(a) factors in a way that warrants leaving his life sentence in place. Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary," to provide adequate punishment and deterrence while also "avoid[ing] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

The sentence here is an outlier among drug trafficking offenders because Mr. Vanholten received a § 851-enhanced mandatory minimum sentence.[3] Federal prosecutors do not uniformly seek § 851 enhancements, so sentences for offenders like him vary considerably. *See* U.S. Sent'g Comm'n, Application and Impact of 21 U.S.C. § 851: Enhanced Penalties for Federal Drug Trafficking Offenders 2, 6 (2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180712_851-Mand-Min.pdf. Some judicial districts

---

[3] Congress enacted § 851 as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 91 Pub. L. No. 513, to make certain mandatory minimum penalties subject to prosecutorial discretion rather than automatic. *United States v. Noland*, 495 F.2d 529, 533 (5th Cir. 1974). Attorney General John Mitchell urged the change because the blanket application of severe penalties across all levels of drug offenders had resulted in "a reluctance on the part of prosecutors to prosecute." *Drug Abuse Control Amendments 1970, Part 1: Hearing on H.R. 11701 and H.R. 13743 Before the Subcomm. on Pub. Health and Welfare of the H. Comm. on Interstate and Foreign Commerce,* 91st Cong. 81 (Feb. 3, 1970). The DOJ told Congress it intended § 851 enhancements for use "against persons engaged in continuing criminal conspiracies," which the department deemed "professional criminals." *Narcotics Legislation: Hearing on S. Res. 48, S. 1895, S. 2590, and S. 2637 Before the Subcomm. to Investigate Juvenile Delinquency of the S. Comm. on the Judiciary,* 91st Cong. 671 (Oct. 20, 1969). Section 851 enhancements later evolved into tools to effect cooperation after Congress amended the drug penalty structure so that an offender can only avoid a mandatory minimum sentence by cooperating with the government. *See* Fed. R. Crim. P. 35(b); 18 U.S.C. § 3553(e)–(f).

see § 851 notices filed for as many as 75% of eligible drug trafficking defendants whereas other districts do not see them filed at all. *Id.* at 22. Since most offenders confronted with an enhanced sentence cooperate, a little less than 4% of eligible defendants ultimately face an enhanced penalty at sentencing like Mr. Vanholten did. *Id.* at 7, 28–30. Those in the 4% receive prison terms roughly ten years longer than the average sentence for similar offenders who evaded the enhanced penalty, and twelve years longer than the average for eligible offenders against whom the notice was never filed. *Id.*

Mr. Vanholten received one of these unusually long sentences as a *de facto* punishment for not cooperating. *See United States v. Kupa*, 976 F. Supp. 2d 417, 420 (E.D.N.Y. 2013), *aff'd*, 616 F. App'x 33 (2d Cir. 2015). At sentencing, the Government cited his refusal to cooperate as the reason it stuck with the enhanced mandatory life sentence. (Doc. 70, p. 6:15–19.) "He knew what the stakes were," the AUSA said. (*Id.*) By contrast, another defendant with a similar background, facing a § 851 enhancement, received a thirteen-year sentence for conspiring to traffic ten kilos of cocaine, having ducked the mandatory minimum, given his cooperation and plea. *See United States v. Medina*, No. 6:13-cr-187 (M.D. Fla. June 18, 2013). Obviously, Mr. Vanholten would not benefit from offense-level reductions for a plea he did not make or substantial assistance he did not offer. *See* U.S.S.G. §§ 3E1.1, 5K1.1. But those reductions do not wholly account for the more

than twenty-year disparity between a thirteen-year prison term and life behind bars. *See, e.g.*, *United States v. Reyes*, No. 5:14-cr-20 (M.D. Fla. May 22, 2014) (defendant guilty of trafficking ten kilos of cocaine received a four-year sentence reduction for cooperating). Under the Sentencing Guidelines, "[a] defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." U.S.S.G. § 5K1.2. So for the purposes of § 3553(a), the disparity in this case is unjustified.

The disparity becomes even more stark considering the law today. Mr. Vanholten would not face a mandatory minimum life term under current law. The First Step Act modified § 841(b)(1)(A) so only a prior "serious drug felony," for which a defendant "served a term of imprisonment of more than 12 months," can trigger a recidivism enhancement, so the marijuana offense would not qualify. 115 Pub. L. No. 391, § 401(a)(2), 132 Stat. 5220. The Act further reduced the enhanced mandatory minimum to fifteen years for a defendant with one prior serious drug felony conviction. *Id.* If sentenced today with the recidivism enhancement, Mr. Vanholten would face a mandatory minimum sentence of fifteen years. (Doc. 85, p. 9.) Without it, he would face a guidelines range of 108–135 months. *See* U.S.S.G. § 2D1.1(c)(5).

So Mr. Vanholten received a sentence at least twenty years longer than the fifteen-year minimum Congress now deems warranted for offenders like him. *See*

7

115 Pub. L. No. 391, § 401, 132 Stat. 5220. He had a criminal history category of II, comprised entirely of nonviolent offenses, which would warrant nothing close to a life sentence under the guidelines. *See* U.S.S.G. § 4A1.3(a)(1)–(4). Whatever "significant period of incarceration" this Court may have settled on at the original sentencing, had it any discretion back then, would not have come within twenty years of Mr. Vanholten's remaining life expectancy. (*See* Doc. 70, p. 9.) A difference of a generation between the actual sentence and the sentence Mr. Vanholten would likely receive today no doubt makes for a gross disparity. *See United States v. Rahim*, 535 F. Supp. 3d 1309, 1319 (N.D. Ga. 2021) (an eighteen-year difference was a gross disparity); *United States v. McCurry*, 6:08-cr-27, 2021 WL 71189, at *4 (M.D. Fla. Jan. 5, 2021) (twenty-year difference); *cf. United States v. McCoy*, 981 F.3d 271, 278 (4th Cir. 2020) (affirming sixteen-year difference).

From the beginning, this Court has harbored doubts that "the objectives of sentencing are accomplished by" foisting "the expense of lifetime incarceration for Mr. Vanholten, and all that goes along with that," onto the rest of society to absorb. (Doc 70, p. 9.) Though he "apparently made his living dealing drugs" before his incarceration (*id.*), his criminal history is entirely nonviolent, as was the offense of conviction. (PSR, ¶¶ 6–17, 33–34.) Now, Mr. Vanholten has served nearly twelve years in prison with no disciplinary infractions and is at a low risk to recidivate, according to BOP records. (Doc. 85-1; Doc. 91, pp. 21–24.) Even without a

8

scheduled release date and facing life in prison, he has nevertheless completed a substantial number of rehabilitative exercises and educational classes regarding drug abuse, anger management, personal finance, and health and nutrition. (Doc. 91, pp. 21–31.) He has also expressed remorse for his actions, acknowledging the wrongfulness of his conduct. (Doc. 83-5.) So he has made strides to better himself while incarcerated, take responsibility for his actions, and learn and grow.

Both Mr. Vanholten's disparately long sentence and his exemplary conduct in prison confirm the Court's original conclusion that life imprisonment was greater than necessary to achieve the purposes of sentencing. (Doc. 70, pp. 9, 13.) In light of his unblemished disciplinary record and rehabilitation while spending nearly twelve years behind bars, along with the reduced mandatory minimum, all penological objectives appear to have been satisfied by his imprisonment. Undoubtedly, the § 3553(a) factors support Mr. Vanholten's release.

## II. Extraordinary and Compelling reasons

Mr. Vanholten suffers from sarcoidosis, an inflammatory disease of the immune system in which groups of white blood cells cluster to form small, red, and swollen (inflamed) lumps, usually in the lungs and heart. *See Sarcoidosis*, MedlinePlus.gov (last accessed Dec. 1, 2023), https://medlineplus.gov/sarcoidosis.html. He and the Government agree that his medical records, both alone and combined with other factors, warrant a finding of extraordinary and compelling

reasons supporting release. (Doc. 96, ¶¶ 5–8.) So too does the Court.

First, extraordinary and compelling reasons exist where the defendant (1) is suffering from a serious physical or medical condition that (2) substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and (3) from which he is not expected to recover. U.S.S.G. § 1B1.13(b)(1)(B)(i). Though he is not at death's door, Mr. Vanholten's medical records show that his sarcoidosis is both chronic and persistent, hurting his lungs and pulmonary function. (Doc. 85-3, p. 10.) He is unlikely to recover from it. (*Id.*) According to the opinion of medical experts, Mr. Vanholten's morbidity puts him at a heightened risk of a sudden and serious cardiac event, and a decreased life expectancy. Kaj Ekströmet, *Sudden Death in Cardiac Sarcoidosis: An Analysis of Nationwide Clinical and Cause-of-Death Registries*, 40 Euro. Heart J. 3121-3128 (Oct. 2019), https://doi.org/10.1093/eurheartj/ehz428.

The conditions of Mr. Vanholten's incarceration at FCI Coleman reduce his ability to adequately control his diet, exercise, medical care team, and other external factors that could mitigate the long-term damage of his sarcoidosis. *See* Marjolein Drent, *Challenges of Sarcoidosis and Its Management*, 385 New Eng. J. Med. 1018, 1027 (Sept. 9, 2021), https://www.nejm.org/ doi/10.1056/NEJMra2101555. His condition can require prolonged treatment to abate the risk of organ damage. Ogugua Ndili Obi, *Biologic and Advanced Immunomodulating Therapeutic Options for*

*Sarcoidosis: A Clinical Update*, 41 Expert Rev. Clin. Pharm. 179, 192 (2021), https://doi.org/10.1080/1751 2433.2021.1878024. Follow-up appointments with specialists are important to prevent disease progression with sarcoidosis. Denrick Cooper & Salvador Suau, *Sarcoidosis*, 40 Emer. Med. Clin. North. Am. 149–57 (Feb. 2022), https://doi.org/10.1016/j.emc.2021.08.012. Yet Mr. Vanholten's medical records reference no visits with a specialist. (Doc. 85-3.) The DOJ makes no secret that the BOP's chronic medical staffing shortage has made its ability to deliver healthcare a challenge.[4] At FCI Coleman, medical personnel have acknowledged the staffing shortage causes significant strain, and inmates have complained about poor healthcare because of it. DOJ OIG, Pandemic Response Report: Remote Inspection of Federal Correctional Complex Coleman 1 (Jan. 2021), https://oig.justice.gov/sites/default/files/reports/21-026.pdf. The risk of mortality can increase by as much as 700 percent based on the care setting and location. Alicia K. Gerke, *Morbidity and Mortality in Sarcoidosis*, 20 Curr. Op. in Pulmonary Med. 2–3 (Sept. 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4326053/pdf/nihms659753.pdf. These circumstances show that Mr. Vanholten cannot provide self-care for his condition while incarcerated. Other

---

[4] DOJ Office of Inspector General ("OIG"), Capstone Review of the Federal Bureau of Prisons' Response to the Coronavirus Disease 2019 Pandemic 46–47 (Mar. 2023), https://oig.justice.gov/sites/default/files/reports/23-054.pdf; DOJ OIG, Limited-Scope Review of the Federal Bureau of Prisons' Strategies to Identify, Communicate, and Remedy Operational Issues 1 (May 2023), https://oig.justice.gov/sites/default/files/reports/23-065.pdf.

11

courts would agree. *See United States v. Gaulden*, No. CR 499-001-1, 2022 WL 2820109, at *4 (S.D. Ga. July 19, 2022); *United States v. McGhee*, 460 F. Supp. 3d 1340, 1343 (S.D. Fla. 2020); *United States v. Collins*, No. 10-CR-00963-1, 2020 WL 3892985, at *4 (N.D. Ill. July 10, 2020); *United States v. Fields*, No. 2:05-CR-20014-02, 2020 WL 3129056, at *3–4 (W.D. La. June 11, 2020); *United States v. Van Cleave*, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *6–7 (W.D. Wash. May 29, 2020); *cf. United States v. Thomas*, No. 17-194 (RDM), 2020 WL 1911558, at *8 (D.D.C. Apr. 20, 2020).

Second, Mr. Vanholten also presents a combination of circumstances that, considered with his health, are "similar in gravity" to the other reasons explicitly listed in subsections (b)(1)–(4) of the policy statement. *See* U.S.S.G. § 1B1.13(b)(5) (newly amended catch-all provision). As discussed, his deteriorating health is a serious medical condition. His rehabilitation and clean disciplinary history while incarcerated are remarkable. (Doc. 85-1; Doc. 91, pp. 21–24.) And it is extraordinary that the Government supports Mr. Vanholten's release and clemency application. (Docs. 94, 96.) In the words of the parties, these factors, "combined with length of time he has already served in the BOP, and the reduced mandatory minimum sentence he would face today, together are 'similar in gravity' to the circumstances of U.S.S.G. § 1B1.13(b)(1)–(4)," and so establish extraordinary and compelling

reasons for release.[5] (Doc. 96, ¶ 8.)

## CONCLUSION

With all the requirements met, the Court will exercise its discretion to reduce Mr. Vanholten's sentence. District courts "are not bound by statutory minimums when granting [§] 3582(c)(1)(A) motions." *United States v. Bryant*, 996 F.3d 1243, 1257 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 583 (2021). Mr. Vanholten has served nearly twelve years of his current life sentence. Factoring in earned time credit over nearly eighteen months, reducing his sentence to either today's § 851-enhanced, fifteen-year mandatory minimum sentence, or time-served, would result in substantially the same release date. So the parties suggest reducing his sentence to "whichever is less." (Doc. 96, ¶ 9.)

The Court will take the parties' advice and reduce Mr. Vanholten's sentence to time-served, effective December 15, 2023, with five years of supervised release. With a projected December 15, 2023 release date, the U.S. Probation Office will have adequate time to develop a release plan. He will also be subject to five years of supervised release by the U.S. Probation Office to monitor his return to society.

---

[5] Mr. Vanholten has served more than ten years of his sentence and, as discussed with the § 3553(a) factors, his sentence is both unusually long and grossly disparate to the likely fifteen-year prison term he would receive if sentenced today, and so the reduced mandatory minimum may be considered under the catch-all provision. *See* U.S.S.G. §§ 1B1.13(b)(6), (c).

Accordingly, it is **ORDERED AND ADJUDGED**:

1. The Government and Defendant William Arthur Vanholten's Joint Motion for Compassionate Release (Doc. 96) is **GRANTED.**

2. Defendant's earlier motion for compassionate release (Doc. 83) is **DENIED AS MOOT**.

3. Defendant William Arthur Vanholten's previously imposed life sentence (Doc. 58) is **REDUCED** to time served, effective December 15, 2023, plus five years supervised release.

4. Defendant's counsel is **DIRECTED** to work with the BOP and Probation to immediately create an approved release plan. Defendant's counsel and the Government are **DIRECTED** to file a joint status report by **December 8, 2023**, detailing Defendant's release plan. Once the Court approves the release plan, the BOP is **DIRECTED** to promptly release Defendant in accordance with the approved release plan, with a release date set for **December 15, 2023**. The Government is **DIRECTED** to file a status report after December 15, 2023, confirming that Defendant was released timely and in accordance with the release plan.

5. An amended judgment will be entered separately.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on December 1, 2023.

ROY B. DALTON, JR.
United States District Judge